UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIENNE DIGERONIMO, | ) | Case No. 1:09-CV-01449 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| COMMISSIONER OF | ) | (Resolving Docket #1) |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Adrienne DiGeronimo filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) and §1383(c)(3) from the administrative denial of disability insurance benefits. At issue is the ALJ's decision dated January 12, 2009, which stands as the final decision of the Commissioner. *See* 20 C.F.R. §404.1481.

Ms. DiGeronimo was 38 years old on the date of the hearing before the ALJ. (Docket #9). She states that she has been unable to work since December 1, 2003, because she suffers from multiple sclerosis, as well as, "persistent and serious anxiety and depression." (Tr. 13, Docket #9 at 2). Ms. DiGeronimo's work history was as a sales person. (Docket #9 at 1). Ms. DiGeronimo "worked after the established disability onset date but this work activity did not rise to the level of substantial gainful activity." (Tr. 15).

After administrative hearing and *de novo* review, an ALJ found that Ms. DiGeronimo had the following severe impairments: "multiple sclerosis and asthma." (Tr. 16). The ALJ determined, however, that "[t]he claimant's anxiety does not pose any additional limitations and is determined to not constitute a severe impairment." *Id.* The ALJ also found that Ms. DiGeronimo did not have an "impairment or combination of impairments that meets or medically equals one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 18). The ALJ finally found, "after careful consideration of the entire record," that Ms. DiGeronimo "has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)." (Tr. 20). The ALJ then determined, based on testimony from a vocational expert, Nancy Borgeson, that Ms. DiGeronimo "is capable of performing past relevant work as a sales person." (Tr. 24). "This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." *Id.*

## I. STANDARD OF REVIEW

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

## II. SEQUENTIAL EVALUATION/MEETING OR EQUALING LISTING OF IMPAIRMENTS

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. *See* §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. *See* 20 C.F.R. §404.1520(a)(iii) and

3

(d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

### III. <u>LAW AND ARGUMENT</u>

Ms. DiGeronimo alleges that the ALJ erred: (1) in determining her RFC given the "substantial evidence of greater restrictions provided by Ms. DiGeronimo's treating and examining physicians; and (2) in "failing to recognize the additional severe impairments of anxiety and depression." (Docket #9 at 3, 9).

### A. <u>RFC Determination</u>

4

Ms. DiGeronimo states that "the evidence of record proves that the ALJ's finding regarding her residual functional capacity is not supported by substantial evidence." Ms. DiGeronimo and the ALJ agree that "light work" is defined in 20 CFR 404.1567(b) as:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Ms. DiGeronimo further notes "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." (Docket #9 at 5, *citing* SSR 83-10, 1983 WL 31251 at *6 (S.S.A.)). Ms. DiGeronimo asserts that there was substantial evidence that she cannot perform light work activity. *Id.*

Ms. DiGeronimo cites the testimony of Edward Aube, P.T., O.C.S. to support her position. Mr. Aube found that Ms. DiGeronimo had the following limitations: (1) she could only safely lift 10 pounds and lost her balance when lifting heavier loads; (2) she had a "wide based gait," was unable to maintain standing with her eyes closed, tired "after ambulating for 10 minutes," and occasionally reaches for support while walking; (3) she has "difficulty concentrating after 30-40 minutes of sitting"; (4) physical therapy sessions were limited to one hour with a rest period every 10-15 minutes; (5) she would require support to climb, balance, stoop, crouch, kneel or crawl and would "fatigue easily performing these activities routinely or continuously"; (6) her ability to reach and handle would be limited by time before fatiguing, pushing and pulling would be limited by strength and balance deficits, and "fine and gross manipulation would be limited by coordination

5

and visual deficits; (7) "heights, moving machinery and extreme temperatures are hazards *** due to her balance and ambulation deficits," extreme heat would cause fatigue and weakness, and noise and fumes would require her to wear protective equipment limiting her endurance and balance; (8) she would require a cane to safely ambulate on uneven surfaces; and (9) she "would benefit from a sit/stand option due to fatigue" and "standing for long periods" would cause a risk of "low back pain due to her limited ability to stabilize her trunk." (Tr. 209-10).

Initially, Defendant properly points out that the ALJ is only required to "consider" opinions from "other sources." *See* SSR 06-03p, 2006 WL 2329939 at *4. Mr. Aube, a physical therapist is not an "acceptable medical source" or "treating source" requiring the ALJ to analyze his opinion under the regulations governing acceptable medical sources. *See* 20 C.F.R. §404.1513(a) (defining acceptable medical sources as licensed physicians, licensed or certified psycholo9gists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).

The ALJ did consider Mr. Aube's opinion, however, she did so while referencing the opinions of the "acceptable medical sources." For example: Dr. Goren, state medical expert, testified that Ms. DiGeronimo was "fully ambulatory," contradicting Mr. Aube's opinion. He further testified that Ms. DiGeronimo would be able to work full-time "carrying 20 pounds occasionally, 10 pounds frequently; never ladder, rope, or scaffold, never balance; occasional fingering; avoid concentrated extreme heat; no moving machinery; and with no unprotected heights." (Tr. 16).

The State Agency determined that Ms. DiGeronimo was capable of occasionally lifting 20 pounds, frequently lifting 10 pounds and could stand/walk and/or sit for 6 hours in an 8 hour workday. (Tr. 225). The State Agency also concluded that Ms. DiGeronimo had no limitations on

her ability to push or pull, but that she should never climb a ladder/rope or scaffold, only occasionally engage in tasks that involve balancing and avoid all exposure to hazards (machinery, heights). (Tr. 226, 228). He further determined that Ms. DiGeronimo should not "work at unprotected heights" or ambulate on uneven terrain and should "avoid moving machinery, and commercial driving." (Tr. 228). Most importantly, Ms. DiGeronimo's treating physicians did not provide opinions supporting her disability claim.

Even Ms. DiGeronimo's testimony contradicted some of the opinions of Mr. Aube. She had a "very active life," including travel, and visits to restaurants and movies with friends. (Tr. 24). She also regularly ran errands, took care of her bills, did yoga, made her bed, vacuumed, [and] did laundry. *Id.* Ultimately, the ALJ determined that "the preponderance of the evidence shows that the allegations of pain and limitation which would preclude the performance of substantial gainful work activity are not credible." *Id.*

Ms. DiGeronimo described past relevant work as requiring lifting less than 10 pounds, and further noted that she never had to climb, stoop, kneel, crouch, crawl, handle or grasp big objects. (Tr. 124). Finally, the ALJ correctly noted that the Vocational Expert testified that Ms. DiGeronimo's limitations would not prevent her from engaging in her past relevant work. (Tr. 24)

Based on the foregoing, substantial evidence exists to support the ALJ's RFC finding and the opinion demonstrates that the ALJ gave proper consideration to the evidence before her.

B. <u>Additional Severe Impairments - Anxiety and Depression</u>

Ms. DiGeronimo asserts that there is substantial evidence in the record to establish that her anxiety and depression are severe impairments. (Docket #9 at 10). Ms. DiGeronimo states that "her treating psychologist, Mr. Gene Benedetto has stated he believes she has no useful ability to

7

complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without unreasonable number and length of rest periods." (*Id.* at 9). Accordingly, he states Ms. DiGeronimo, she "is entitled to have her conditions evaluated under the listing for mental disorders and to have the impact of mental limitations upon her residual functional capacity taken into account." (*Id.* at 10).

The ALJ noted that Ms. DiGeronimo had been seeing Mr. Bendetto since March 2008, and described Mr. Bendetto's testimony. (Tr. 22). The ALJ then determined that such opinion was "not supported by evidence in the record." *Id.* The ALJ stated that, "[d]espite the claimant's allegations of limitations, the record documents that the claimant was very active as late as November 2005, almost 2 years after her alleged onset date of disability *** and that her condition appears to be well controlled at this time with treatment." (Tr. 23).

The undersigned initially notes that there are no office notes or test results to support Mr. Bendetto's opinion. (See Tr. 157-165). Moreover, the State Agency who conducted the psychiatric review determined that Ms. DiGeronimo suffered from an affective disorder (adjustment reaction) and a personality disorder ("mixed personality: involving narcissistic/OCD/perfectionistic" tendencies), but that these impairments were not severe. (Tr. 243, 244, 246). The State Agency concluded that Ms. DiGeronimo had (1) no restriction of activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation. (Tr. 249).

Dr. Pickholtz, a state psychologist, opined that Ms. DiGeronimo's has a GAF "around 60." (Tr. 242). Dr. Pickholtz stated:

8

> "[Ms. DiGeronimo's] overall ability to relate to co-workers and others, based upon current presentation seems to fall within the low average range. Her overall abilities to handle eight-hour work activities relative to memory and cognitive functioning seems to fall within the mild range of impairment at worst. Her overall abilities to handle eight-hour work activities relative to pace, consistency and reliability, from a psychological perspective, seem to fall with the mild range of impairment with her major impediment associated with sequelae to her MS. Her overall abilities to handle eight-hour work activities relative to the stresses and pressures from work, from a psychological perspective, seems to fall with the mild range of impairment with, once again, her major impediment associated with her physical limitations and difficulties."

*Id.*

Based on the foregoing, substantial evidence exists to support the ALJ's determination that Ms. DiGeronimo's anxiety and depression do "not pose any additional limitations" beyond those caused by her MS and therefore, do "not constitute a severe impairment." (Tr. 16).

### III. **CONCLUSION**

The issues before this Court must be resolved under the standard of whether the determination is supported by substantial evidence of record. "Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review "is limited to determining whether there is substantial evidence in the record to support the findings"); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Based on the arguments presented, the record in this matter, the applicable law, and for the foregoing reasons the ALJ's decision is supported by substantial evidence and is affirmed.



                                                                        /s/James S. Gallas
                                                                      United States Magistrate Judge

Dated: August 4, 2010